IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| NELSON PUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10cv988-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

Plaintiff Nelson Pugh ("Pugh") applied for disability insurance benefits pursuant to

Title II of the Social Security Act,  42 U.S.C. § 401 *et seq*., and for supplemental security

income benefits under Title XVI of the Social Security Act,  42 U.S.C. § 1381 *et seq*.,

alleging that he was unable to work because of a disability.  His application was denied at

the initial administrative level.  The plaintiff then requested and received a hearing before

an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the

claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision

consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United

States Magistrate Judge conducting all proceedings in this case and ordering the entry of final

judgment.

## STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)    Is the person presently unemployed?
> (2)    Is the person's impairment severe?
> (3)    Does the person's impairment meet or equal one of the specific
>        impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)    Is the person unable to perform his or her former occupation?
> (5)    Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec., 3*63 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## DISCUSSION

An administrative law judge has a duty to develop a full and fair record.  *Kelley v. Heckler,* 761 F.2d 1538 (11th Cir. 1985).  The ALJ is not free to simply ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence.  *Marbury v. Sullivan*, 957 F.2d

---

cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

837, 839, 840-841 (11ᵗʰ Cir. 1992).  When there is a conflict, inconsistency or ambiguity in the record, the ALJ has an obligation to resolve the conflict, giving specific reasons supported by the evidence as to why he accepted or rejected one opinion or record over another.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11ᵗʰ Cir. 1981).[4]  "Failure to do so requires the case be vacated and remanded for the proper consideration." *Hudson v. Heckler,* 755 F.2d 781, 785 (11ᵗʰ Cir. 1985).

This case is now pending before the court on review of the record and briefs of the parties.  On March 5, 2012, the court heard oral argument, and as stated in open court, the court has concerns about the posture of this case.  The court ordered the parties to file supplemental briefs addressing the court's concerns.  As will be explained below, the court concludes that the ALJ failed to fully and fairly develop the record concerning the plaintiff's mental impairments.  At a minimum, the record demonstrates that there exists a conflict or ambiguity in the evidence regarding the plaintiff's mental impairments.  Accordingly, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

The ALJ found that the plaintiff suffers from severe impairments that include

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11ᵗʰ Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

schizophrenia, paranoid type, polysubstance dependence (alcohol, cannabis and cocaine), borderline intellectual functioning, traumatic arthritis to the right shoulder, generalized osteoarthritis, peripheral neuropathy, hypertension, a seizure disorder, and gout. (R. 17).  He further found that while Pugh could not perform his past relevant work, he could perform other work in the national economy.  The ALJ found that drugs and alcohol were contributing factors to Pugh's disability, and thus he was not disabled.

Pugh underwent a number of consultative examinations during the administrative process.  On May 26, 2005, Pugh underwent a physical examination by Dr. Hughes.  Dr. Hughes expressed concern about the loss of range of motion in Pugh's right shoulder.  (R. 282-83).  An x-ray on March 29, 2005 indicated that the clavicle and shoulder were fused. (R. 302).

On May 1, 2006, Dr. Willis Crawford conducted another physical evaluation on Pugh. (R. 305-08).  Pugh complained of joint pain, high blood pressure, dizziness and back pain. At that time, Dr. Crawford diagnosed Pugh with gout and a '[h]istory of gout [and] [a]uditory hallucinations."  (R. 308).

On May 8, 2006, a Social Security consultant noted that Pugh "does not possess a mental impairment," (R. 311), which is in direct contradiction to the medical evidence of record that he suffers from paranoid schizophrenia.  (R. 333-34).

On May 1, 2007, Pugh underwent a neurological evaluation by Dr. Pacquiao. (R. 321-

323).  She noted that Pugh was bradykinetic,[5] increasingly during the examination.  (R. 322)

Dr. Pacquiao suggested "neuropsychometric testing as [Pugh] apparently has a history of

'slowed thinking in childhood.'"  (*Id.*)

On June 13, 2007, Pugh was evaluated by Dr. Golomb.  Dr. Golomb noted that Pugh

was "very slow to respond."  (R. 328).  Dr. Golomb noted that Pugh "appeared to have a

moderate degree of mental retardation."  (*Id.*)  Pugh had been discharged the previous day

from a mental hospital where he had been treated for mental illness and alcoholism.  (*Id.*)

Dr. Golomb specifically noted that Pugh "displayed characteristics of Korsakoff's psychosis,[6]

and he noted Pugh's schizophrenia.  (R. 331).

> He appears to have a serious problem with chronic alcoholism, which is
> characterized by his alcoholic psychosis, including alcoholic hallucinations.
> *His schizophrenic episodes are complicated by mental deficiency, which would
> make him a rather unreliable employee, and one who would not follow
> directions well*.  His potential for functioning at a productive level of work is
> virtually nil.  He appears to also be suffering from what I gather is some gouty
> arthritis and some osteoarthritis, and these conditions appear to be fleeting.
> There is no evidence that I could see of rheumatoid arthritis.  The prognosis
> appears to be very poor for one day after discharge from a psychiatric unit for
> treatment of his alcoholism; he appears to be drinking again.

(R. 333-34) (emphasis added).

---

[5]  Bradykinetic is defined as "[p]ertaining to slowed ability to start and continue movements, and impaired ability to adjust the body's position. Bradykinesia can be a symptom of neurological disorders, particularly Parkinson's disease, or a side effect of medications."

[6]  Korsakoff's psychosis is a "form of amnesia often seen in chronic alcoholics that is characterized by a loss of short-term memory and an inability to learn new skills. The person is usually disoriented, may present with delirium and hallucinations, and confabulates to conceal the condition."  The condition is irreversible even if the patient ceases to drink.

On July 17, 2007, Dr. Bryan conducted nerve conduction studies.  At that time, Pugh's blood pressure was 260/140 and 230/120.  (R. 341).  Dr. Bryan noted that "his blood pressure is also not controlled or even close to being controlled."  Dr. Bryan found demyelinating distal sensorimotor neuropathy and wondered whether Pugh was suffering from vasoconstriction secondary to his hypertension.  (R. 341-42).  He also suggested alcohol or diabetes could be a cause.  (*Id.*)

In October 2007, Pugh suffered an alcohol-induced seizure.  (R. 368-69).

On March 31, 2008, Pugh underwent a psychological evaluation by Dr. Glen King. (R. 383-86).  At the evaluation, Pugh "had an odor of cigarettes and alcohol about him."  He admitted to drinking copious amounts of beer the day before the examination.  (R. 384). Pugh's IQ scores were Verbal 50, Performance 52, and Full 46 which places him in the range of moderate mental retardation.  (R. 385).  Dr. King opined that his performance was consistent and credible.  Dr. King attempted to administer the WMS-III to Pugh but "his performance was so poor due to the combination of mental retardation and intoxication, that it was discontinued."  (R. 386).  Dr. King opined that he did "not expect that if [Pugh] were to discontinue all of his drug usage that his intelligence quotient would experience any rebound."  (R. 386).

In January 2010, Pugh suffered an acute pontine hemorrhage,[7] (R. 484), a stroke with right side hemiparesis, (R. 539), and an acute pulmonary edema, (R. 552).  His blood

---

[7] This condition is commonly referred to as a brain bleed.

pressure was dangerously high, recorded at 236/161 and 214/145.[8] He was hospitalized and transferred to a nursing home where he has remained. The records detailing Pugh's latest medical emergencies were presented to the Appeals Council but were not considered.

The court's primary concern focuses on Pugh's mental impairments. During the administrative hearing, the ALJ asked the medical expert about the Listings. *See* 20 C.F.R. Pt. 220, App. 1, Listings. The medical expert referred to Listing 12.03, *Schizophrenia, Paranoid and Other Psychotic Disorders*, but she did not discuss this Listing. Rather, she discussed whether Pugh meets the listing for mental retardation. (R. 83-84). The ALJ then asked her to consider Pugh's functioning "factoring out" the drugs and alcohol.

> A:      Judge, I will state this based on factoring out D & A and *compliance with treatment for mental illness that I have mentioned, the schizophrenia*, and that would be moderate impairments.

(R. 87) (emphasis added).

Shortly thereafter, Pugh's attorney questioned the medical expert about Dr. King's diagnosis of mental retardation. The medical expert agreed that because Pugh was intoxicated during the IQ testing, there is no valid assessment of his intellectual functioning in the record. (R. 88-89).

Since the administrative proceedings, Pugh has suffered at least one stroke, and a

---

[8] The court also has concerns about whether Pugh's hypertension is "properly controlled." Medical records reveal that his blood pressure is routinely above 200 but the doctors rely on Pugh's statements that he is taking blood pressure medication. If Pugh is taking his medication, the hypertension is clearly not controlled. If he is not taking the medication due to either a mental impairment or an inability to pay for it, then the hypertension is not controlled. The ALJ does not adequately address this impairment.

brain bleed.  The medical evidence further suggests that Pugh suffers from Korsakoff's psychosis.  At oral argument, Pugh's counsel represented to the court that Pugh is physically and mentally incapacitated.

The plaintiff has clearly been diagnosed with paranoid schizophrenia.  Consequently, the ALJ has an obligation to determine whether Pugh meets or equals this listing. Furthermore, it appears that the plaintiff has been diagnosed, during the pendency of his application for benefits, with Korsakoff's syndrome.  Further complicating matters, in his hypotheticals to the VE, the ALJ relies on the medical expert's description of Pugh's impairments without consideration of whether Pugh is seeking treatment for schizophrenia. In addition, in a hypothetical posed to the VE, the ALJ indicates that Pugh "graduated" from high school.  There is conflicting information in the record about his level of intellectual functioning.  While he "finished" high school, there are notations that Pugh completed high school and that he got a "certificate."   Consequently, the hypotheticals posed to the vocational expert do not accurately describe Pugh's intellectual abilities.

There is sufficient evidence in this record from which the ALJ should have concluded that it was necessary to require additional evidence regarding the plaintiff's mental impairments before rendering a decision regarding his disability.  Without developing the record more fully regarding the plaintiff's mental impairments, the ALJ could not make an informed decision based on the record before him and thus, his decision is not supported by substantial evidence.  For the reasons as stated, the court concludes that the ALJ erred as a

matter of law when he failed to properly consider Pugh's mental impairments.

At oral argument and in a supplement brief, the Commissioner argues that if this case is remanded, it should be remanded for further proceedings rather than an award of benefits. *See* Doc. # 20.  At this juncture, based on Pugh's current mental incapacitation, it appears highly unlikely that on remand, the Commissioner could secure a valid assessment of Pugh's mental abilities.  However, the Commissioner asserts that he can secure "additional medical records, lay witness statements (both new and old), and medical expert testimony (based upon the expert's review of the medical evidence." (Doc. # 20 at 6).  The Commissioner also maintains that "the ALJ could take a fresh look at Plaintiff's earlier testimony and statements regarding his earlier condition." (*Id*.)  Based on these representations of the Commissioner, the court refrains from deciding on the present record whether the plaintiff's medical condition meets or equals the Listings because it is within the province of the Commissioner to determine whether the plaintiff's impairments rise to the level that render him disabled.

However, the court reminds the Commissioner that "Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking.  It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*.  The regulations also make the nature of the SSA proceedings quite clear.

They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner."  20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

Accordingly,  this case  will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.  It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have sixty (60) days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b).

*See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

A separate final judgment will be entered.

Done this 28th day of June, 2012.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

11